FLORENCE CEMENT COMPANY v VETTRAINO

Docket No. 295090. Submitted February 3, 2011, at Detroit. Decided May 3,
2011, at 9:00 a.m. Amended, 292 Mich App 801 (2011).

Florence Cement Company brought an action in the Macomb Circuit
Court against Antonio Vettraino, Dante Bencivenga, A.V. Invest-
ment Corporation, Ernest J. Essad, Jr., Shelby Property Investors,
L.L.C., and others, seeking payment for work performed pursuant
to a construction contract between Florence and Shelby. Shelby's
founding members were Essad, Bencivenga, and Vettraino, how-
ever, A.V. Investment later replaced Vettraino as a member. Flo-
rence argued that Shelby had made improper distributions to its
members while insolvent and sought, in part, to have the corporate
veil pierced. The trial court, Edward Servitto, Jr., J., entered a
consent judgment in favor of Florence and against Shelby. The
remaining relevant defendants at trial were Essad, Bencivenga,
Vettraino, and A.V. Investment (hereafter defendants). Florence
sought to have the corporate veil of Shelby pierced in order to
require that all the distributions made by Shelby while insolvent
be refunded to Shelby, so that Shelby's obligation to Florence
under the consent judgment could be satisfied. Defendants moved
for a directed verdict. The trial court entered a judgment of no
cause of action against Vettraino and A.V. Investment and judg-
ments in the amount of $19,000 each against Essad and Ben-
civenga. Florence appealed the judgment of no cause of action and
the judgments against Essad and Bencivenga. Essad cross-
appealed the judgment against him.

The Court of Appeals held:

1. The rules regarding piercing a corporate veil are applicable
in determining whether to pierce the corporate veil of a limited-
liability company. In order for a corporate veil to be pierced, the
corporate entity must be a mere instrumentality of another
individual or entity, must have been used to commit a wrong or
fraud, and there must have been an unjust injury or loss to the
plaintiff.

2. Defendants used Shelby as a mere instrumentality for
themselves as individuals and did not treat Shelby as an entity
separate from themselves. Defendants used Shelby to commit a

wrong or fraud. Florence suffered a significant loss as a result of defendants' treating Shelby as a mere instrumentality of themselves and deliberately undercapitalizing Shelby. Florence satisfied all the elements for piercing the corporate veil of Shelby. The trial court clearly erred by concluding otherwise, therefore, reversal is warranted.

3. Shelby made several distributions to defendants while it was insolvent in addition to the $38,000 in distributions to Essad and Bencivenga. The trial court erred by holding that Shelby only made $38,000 in distributions to its members while insolvent.

4. MCL 450.4307(1)(a) and (b) provide that a limited-liability company cannot make a distribution if, after giving the distribution effect, the limited-liability company would not be able to pay its debts as they become due or the company's assets would be less than its liabilities. MCL 450.4308 provides that a member of a limited-liability company who assents to or receives such a distribution is personally liable, jointly and severally, to the limited-liability company for the amount of the distribution. The trial court erred by granting judgments against Essad and Bencivenga individually, rather than jointly and severally, because they assented to distributions made while Shelby was insolvent.

5. The parties tried the statutory claim for distributions, thereby consenting to the statutory claim. Essad's claim that his due-process rights were violated because Florence did not plead a statutory claim for distributions failed.

6. Essad waived any claim that Florence's claim was time barred because the limitations period in MCL 450.4308(5) had expired because Essad did not plead the statute-of-limitations defense in his first responsive pleading or amend his pleadings in the trial court to include the affirmative defense.

7. The trial court erred by holding that Florence could recover for Essad's violation of MCL 450.4307. MCL 450.4308 provides that a member of a limited-liability company who assents to or receives a distribution in violation of MCL 450.4307 is personally liable, jointly and severally, to the limited-liability company for the amount of the distribution. The trial court, on remand, must modify the judgment by ordering Shelby's members to refund the unlawful distributions to Shelby so that Shelby can satisfy its obligation to Florence under the consent judgment.

Reversed and remanded.

1. Corporations — Limited Liability Companies — Piercing the Corporate Veil.

> The rules regarding piercing a corporate veil apply in determining whether to pierce the corporate veil of a limited liability company; in order for a corporate veil to be pierced, the corporate entity must be a mere instrumentality of another individual or entity, must have been used to commit a wrong or fraud, and there must have been an unjust injury or loss to the plaintiff.

2. Corporations — Limited Liability Companies — Words and Phrases — Distributions.

> A limited liability company cannot make a distribution if, after giving the distribution effect, the company would not be able to pay its debts as they become due or its assets would be less than its liabilities; a member of a limited liability company who assents to or receives such a distribution is personally liable, jointly and severally, to the limited liability company for the amount of the distribution; a "distribution" is a direct or indirect transfer of money or other property or the incurrence of indebtedness by a limited liability company to or for the benefit of its members or assignees of its members in respect of the members' membership interests (MCL 450.4102[1][g], MCL 450.4307[1][a] and [b], MCL 450.4308[1]).

3. Trial — Pleading — Issues Not Raised by the Pleadings.

> Issues that are not raised by the pleadings but are tried by the express or implied consent of the parties are treated as if they had been raised by the pleadings (MCR 2.118[C][1]).

4. Trial — Pleading — Affirmative Defenses — Failure to Raise Affirmative Defenses — Waiver — Cure.

> A defendant waives an affirmative statute-of-limitations defense by failing to raise it in the defendant's first responsive pleading; the defendant can cure the failure to raise the defense in the first responsive pleading by amending the pleading, but the defendant must, in any event, raise the defense in the trial court to prevent waiver of the defense (MCR 2.111[F][3][a]).

*Ruggirello, Velardo, Novara & Ver Beek, P.C.* (by *Armand Velardo* and *Michael Oblizajek*), for Florence Cement Company.

*Williams, Williams, Rattner & Plunkett, PC* (by *Wayne Walker*), for Antonio Vettraino, Ernest J. Essad, Jr., and A.V. Investment Corporation.

Before: WHITBECK, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

### I. OVERVIEW

Plaintiff, Florence Cement Company, appeals as of right the trial court's judgment of no cause of action in favor of defendants Antonio Vettraino and A.V. Investment Corporation. Florence also appeals the trial court's award to Florence of $19,000 each from defendants Ernest J. Essad, Jr., and Dante Bencivenga. Essad cross-appeals the money judgment against him. We reverse and remand.

### II. FACTS

#### A. THE UNDERLYING EVENTS

This case arises out of a construction contract between Florence and Shelby Property Investors, L.L.C. Shelby is a limited-liability company formed to own, develop, and sell vacant lots for residential construction. Shelby's founding members were Essad, Bencivenga, and Vettraino. However, A.V. Investment later replaced Vettraino as a member. In July 2006, Florence contracted with Shelby to perform concrete and asphalt work on Shelby's development. Ultimately, the project was not successful. Nevertheless, Shelby was able to pay all the contractors and subcontractors on the job, except one—Florence.

In establishing the subject project, Shelby obtained a cost estimate for the development, and, on the basis of the cost estimate, Shelby determined that it would need to borrow money in order to finance the project. Accordingly, around September 2003, Shelby obtained a loan

from the private banking department of Comerica Bank for $700,000. Shelby's members provided unlimited personal guarantees that this loan would be repaid.

In October 2003, Essad and Bencivenga personally borrowed $300,000 from Comerica, which Essad and Bencivenga then "loaned" to Shelby to invest in the project. There was no promissory note by Shelby to Essad and Bencivenga. When asked whether Shelby paid the interest on the $300,000, Essad testified that Shelby "reimbursed" him and Bencivenga. According to Essad, "The checks went to the bank as a reimbursement to us for the interest on the note [to Comerica]." In other words, "[i]nstead of writing two checks, [they] wrote one check to the bank directly." "The money was lent through me [Essad] into Shelby . . . . Shelby . . . paid the interest. And we had [Shelby] pay it directly instead of paying it to us and then us paying it . . . to the bank."

In January 2005, Shelby obtained another loan from Comerica in the amount of $2,134,000. The proceeds of this loan were used, in part, to pay off the original $700,000 loan. Essad, Bencivenga, and Vettraino personally guaranteed this additional loan.

In February 2005, Shelby made certain payments to Essad and Bencivenga. Shelby paid $20,000 to Bencivenga, and testimony indicated that this payment was to reimburse Bencivenga for earnest money that he had paid on the purchase of some of the property. Shelby also paid Bencivenga approximately $104,000, which defendants contend was to compensate Bencivenga for two parcels that he had acquired for the development project, as reimbursement for preconstruction carrying costs. Similarly, Shelby reimbursed Essad $97,350 for expenses that he had paid as preconstruction carrying costs.

In November 2005, Shelby's members concluded that it was short $226,000 in capital. So Shelby's members

obtained yet another loan from Comerica in that amount. The proceeds of this loan were invested in the development project.

In November 2006, when seeking a final draw from Comerica, Essad signed a sworn statement to Comerica, stating the amounts of money that various contractors were owed. This sworn statement indicated that of the total amount requested in the final draw Shelby owed Florence $142,000 of that amount. However, the actual amount owed on Florence's contract was $256,557.27. Essad testified about why the lower figure was used, instead of the contract price:

> When we got all the final bills in, when I looked at what money was left in the draws on the $2,000,000.00 mortgage and the cash we had . . . that was the most that I could pay them out of the bank funds, and out of the funds that we had on hand, so I talked to somebody at the bank . . . [and] told her what was going on, and told her I wanted to . . . make a final draw in effect out of the loan and pay as much money as I could pay out, in particular, to Florence, so I drew down 142,000 for them and paid it to them.

Essad admitted at trial that the other contractors were paid in full with this final draw. Essad contended at trial that the contractors were paid by Shelby in the order in which they finished their work, or in the order in which he received their bills. It is undisputed that Comerica provided the remaining $142,000 requested for Florence, and that this amount, but only this amount, was paid to Florence, leaving a shortfall of $114,557.27.

### B. PROCEDURAL HISTORY

Florence commenced this action in April 2008 against Vettraino, Bencivenga, A.V. Investment, Essad, Shelby, and others. Florence's complaint alleged claims

based on theories of alter ego, breach of contract, account stated, fraudulent conveyances, fraud in the inducement, violation of the building contract fund act, MCL 570.151 *et seq.*, and unjust enrichment/quantum meruit and sought exemplary damages in the form of attorney fees and other further relief and foreclosure of construction liens. The trial court entered a consent judgment for $114,000 in Florence's favor and against Shelby. Therefore, the remaining relevant defendants at trial were Vettraino, Bencivenga, A.V. Investment, and Essad (hereafter "defendants").

At trial, Florence argued that Shelby had made improper distributions to its members while insolvent. Florence sought to have the corporate veil pierced in order to require that all the distributions made by Shelby, while insolvent, be refunded to Shelby, so that Shelby's obligation to Florence (under the consent judgment) could be satisfied. At trial, Florence's expert witness, Michael Locricchio, an attorney and CPA, opined that, on the basis of his review of financial documents from Shelby and its members, Shelby was insolvent in 2004 through 2006.

At the close of Florence's proofs, defendants moved for a directed verdict. Essad contended that there was a lack of evidence of ill will or fraudulent intent and that there was no evidence to prove alter ego or undercapitalization. The trial court concluded that, "as you go through the inventory of the records that have been provided[,] this project was not underfunded," and there was no fraudulent act. However, the trial court also concluded that a change by Essad and Bencivenga in the characterization of $20,000 capital investments to loans was a distribution that was contrary to the limited liability act, although the trial court did not find that it was fraudulent. The trial court therefore con-

cluded that there was a question of fact about whether the recharacterizations amounted to improper distributions. Accordingly, the trial court granted a directed verdict to Vettraino and A.V. Investment and dismissed "all the other matters . . . with the exception of" the alleged distributions to Essad and Bencivenga.

Following the conclusion of trial, the trial court held that there was a distribution that caused Shelby's total liabilities to be greater than the sum of its total assets. The trial court entered a judgment of no cause of action against Vettraino and A.V. Investment, and judgments in the amount of $19,000 against Essad and $19,000 against Bencivenga. Florence requested that Essad and Bencivenga be held jointly and severally by liable, but the trial court rejected that request, reasoning that "[e]ach took a distribution." Florence now appeals and Essad cross-appeals.

### III. PIERCING THE CORPORATE VEIL

#### A. STANDARD OF REVIEW

Florence argues that the trial court erred by failing to pierce Shelby's corporate veil. Following a bench trial, this Court reviews findings of fact for clear error and conclusions of law de novo.[1] This Court also reviews de novo a trial court's decision on whether to pierce a corporate veil because piercing a corporate veil is an equitable remedy.[2]

#### B. LEGAL STANDARDS

The rules regarding piercing a corporate veil are applicable in determining whether to pierce the corpo-

---

[1] *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

[2] *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996).

rate veil of a limited-liability company.[3] While "[t]here is no single rule delineating when the corporate entity may be disregarded[,] ... [t]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused."[4] In order for a court to order a corporate veil to be pierced, the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff.[5]

### C. MERE INSTRUMENTALITY

The facts in this case show that defendants used Shelby as a mere instrumentality for themselves as individuals.[6] Defendants clearly did not treat Shelby as an entity separate from themselves. Bencivenga acquired parcels of property, which he turned over to Shelby without a formal transfer. Essad and Bencivenga incurred expenses for developmental costs, and then simply had Shelby reimburse them directly. And Shelby made payments at the behest of defendants, but these payments were not beneficial to the company. In fact, through his role as financial manager of Shelby, Essad wrote the distribution checks personally. Moreover, whenever Shelby needed capital, defendants borrowed

---

[3] *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 510 n1; 802 NW2d 712 (2010).

[4] *Foodland Distrib*, 220 Mich App at 456-457 (quotation marks and citations omitted).

[5] *Rymal v Baergen*, 262 Mich App 274, 293-294; 686 NW2d 241 (2004) (citations omitted); see also *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 702-705; 762 NW2d 529 (2008).

[6] See *Rymal*, 262 Mich App at 293-294.

money from Comerica. They did this either in their own names or as guarantors for Shelby. Defendants therefore treated their personal liabilities to Comerica as Shelby's liabilities. As a result, the debts of Shelby to Comerica for the development project were coterminous with those of its members to Comerica, and vice versa. And while Shelby had no duty to make payments on behalf of its members, Shelby made payments directly to Comerica on defendants' loans.

Thus, Shelby was defendants' alter ego. Defendants made no distinction between their own debts and Shelby's debts. Defendants did not treat Shelby as a separate entity. Such a failure is a hallmark of a claim for piercing the corporate veil. Essentially, where members do not treat an artificial entity as separate from themselves, neither will this Court.

### D. WRONG OR FRAUD

The facts of this case further show that defendants used Shelby to commit a wrong or fraud.[7] Essad falsified the sworn statement that he submitted to Comerica for the final draw of the remaining loan proceeds. It is undisputed that the request for the draw stated that Shelby "OWES NO MONEY FOR THE IMPROVEMENT OTHER THAN AS SET FORTH ABOVE." However, Essad knew that Shelby owed Florence more than the $142,000 indicated on this request for the draw because Essad had signed the contract with Florence on behalf of Shelby. Thus, the evidence overwhelmingly shows that Essad knowingly falsified the request for the draw, which amounted to fraud. And, as such, Essad clearly used Shelby to commit a wrong or fraud.

---

[7] See *id.*

Further, Essad, a licensed attorney, is held to a higher standard. His extensive experience and expertise in business formations and transactions clearly should have provided him with the knowledge that falsifying a sworn statement is fraudulent. We will not countenance an intentional falsification, no matter how beneficent the result; that is, we reject defendants' argument that there was no wrong when Florence was paid at least part of its contractual consideration.

Additionally, testimony about Shelby's tax returns showed that Shelby was insolvent at the time that it entered into the contract with Florence. Shelby was undercapitalized. It had debt in the millions of dollars and capital contributions of only $2,000. Defendants knew or should have known that when Shelby attempted to settle the Florence account there would be insufficient funds to do so. Under MCL 450.4307(1)(a) and (b), a limited-liability company cannot make a distribution if, after giving the distribution effect, the limited-liability company would not be able to pay its debts as they become due, or the limited liability company's assets would be less than its liabilities. As a result of the distributions to Essad and Bencivenga, Shelby was unable to pay its full debt to Florence when it came due. This knowledge, or constructive knowledge, points to fraudulent intent.

### E. UNJUST INJURY OR LOSS

Finally, Florence suffered a significant loss as a result of defendants treating Shelby as a mere instrumentality of themselves and deliberately undercapitalizing Shelby.[8] Namely, Florence lost over $100,000 of its contractual payment for the work that it undisputedly performed,

---

[8] See id.

F. CONCLUSION

Because defendants treated their own liabilities as Shelby's liabilities and vice versa, intentionally undercapitalized Shelby, causing Shelby to be continuously insolvent, including at the time it contracted with Florence, and because Essad falsified the sworn statement in the final loan draw request, Florence satisfied all the elements for piercing the corporate veil. Accordingly, we conclude that reversal is warranted because the trial court clearly erred by concluding otherwise.

IV. DISTRIBUTIONS

A. STANDARD OF REVIEW

Florence argues that the trial court erred by granting judgment in its favor only on the distributions of $19,000 each to Essad and Bencivenga. According to Florence, Shelby's 2005 payments of $104,039.50 to Bencivenga and $97,350 to Essad, as well as Shelby's interest payments to Comerica on the $300,000 loan taken in October 2003 and a $226,000 loan taken in November 2005, were also distributions. This Court reviews issues of statutory application de novo.[9]

B. ANALYSIS

A distribution is "a direct or indirect transfer of money or other property or the incurrence of indebtedness by a limited liability company to or for the benefit of its members or assignees of its members in respect of the members' membership interests."[10]

---

[9] *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).

[10] MCL 450.4102(1)(g).

Here, Shelby made several distributions to defendants while it was insolvent. As the trial court correctly held, the recharacterization of Essad's and Bencivenga's individual $20,000 capital contributions as loans of $19,000 to Shelby amounted to distributions because they resulted in Shelby incurring indebtedness to its members. Likewise, the 2005 payments of $104,039.50 to Bencivenga and $97,350 to Essad, as well as Shelby's interest payments to Comerica on the $300,000 loan taken in October 2003 and the $226,000 loan taken in November 2005, were distributions because they were transfers of money to or for the benefit of Shelby's members.[11] This is the extent of the requisite analysis necessary to categorize the payments as distributions.[12] Consequently, the trial court erred by holding that Shelby only made $38,000 in distributions to its members while insolvent.

## V. JOINT AND SEVERAL LIABILITY

### A. STANDARD OF REVIEW

Florence argues that the trial court erred by granting judgments against Essad and Bencivenga individually, rather than jointly and severally. According to Florence, pursuant to statute, Essad and Bencivenga were jointly and severally liable for the total distributions taken while Shelby was insolvent. This Court reviews issues of statutory application de novo.[13]

### B. ANALYSIS

As stated, a limited-liability company cannot make a

---

[11] *Id.*

[12] See *McManamon v Redford Charter Twp*, 273 Mich App 131, 136; 730 NW2d 757 (2006).

[13] *Dressel*, 468 Mich at 561.

distribution if, after giving the distribution effect, the limited-liability company would not be able to pay its debts as they become due, or the limited-liability company's assets would be less than its liabilities.[14] And under MCL 450.4308, a member of a limited-liability company who assents to or receives such a distribution is "personally liable, *jointly and severally*, to the limited liability company for the amount of the distribution . . . ."[15]

Essad and Bencivenga, along with Vettraino, controlled Shelby, so there is no possible way that Shelby could have made the distributions to Essad and Bencivenga without their consent. Essad controlled the finances of Shelby. Thus, Essad's consent is clear because he personally controlled Shelby's finances and wrote the checks. A corporate entity can only act through its officers.[16] Indeed, defendants do not even contend that the distributions to Essad and Bencivenga were somehow made without their consent. Essad and Bencivenga are therefore "personally liable, jointly and severally" because they assented to distributions made while Shelby was insolvent.[17]

### VI. ESSAD'S CROSS-APPEAL

#### A. STANDARD OF REVIEW

This Court reviews due-process claims and statutory claims de novo.[18]

---

[14] MCL 450.4307(1)(a) and (b).

[15] MCL 450.4308(1) (emphasis added).

[16] *People v American Med Ctrs of Mich, Ltd*, 118 Mich App 135; 324 NW2d 782 (1982); *Mossman v Millenbach Motor Sales*, 284 Mich 562, 568; 280 NW 50 (1938).

[17] MCL 450.4308(1).

[18] *Dressel*, 468 Mich at 561; *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

### B. DUE PROCESS

Essad argues that the trial court violated his due-process rights when it entered judgment against him because Florence did not plead a statutory claim for distributions.

MCR 2.118(C)(1) governs the amendment of complaints at trial, and provides:

> *When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings.* In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.[19]

Here, the parties tried the statutory claim, in addition to the piercing-the-corporate-veil remedy, thereby consenting to the statutory claim. Accordingly, Essad's due-process argument fails.

### C. LIMITATIONS PERIOD

Essad argues that Florence's claim was time barred because the limitations period in MCL 450.4308(5) had expired.

MCR 2.111 requires affirmative defenses be stated in a party's responsive pleadings.[20] Under the Michigan Court Rules, a defendant waives a statute-of-limitations defense by failing to raise it in the first responsive pleading.[21] The court rule states, in part:

> Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in

---

[19] Emphasis added.

[20] MCR 2.111(F)(3).

[21] *Walters v Nadell*, 481 Mich 377, 389; 751 NW2d 431 (2008).

accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting

> (a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; *statute of limitations*; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery[.][22]

Defendants had separate counsel and filed separate answers in response to Florence's complaint. While Bencivenga affirmatively raised the statute-of-limitations defense in his initial answer, Essad did not. "It has long been the rule in Michigan that a defendant may waive a statute of limitations defense by failing to raise it in the trial court."[23] However, "[t]he defendant may cure his failure to raise the defense in his first responsive pleading by amending the pleading, but the defendant must, in any event, raise the defense in the trial court."[24] On behalf of himself and Shelby, Essad did file a motion to amend and conform the pleadings to the evidence presented. However, the lower-court record does not contain Essad's amended pleading, nor does it contain an order concerning the disposition of that motion. Because Essad did not affirmatively plead the statute of limitations in his responsive pleadings and because the record does not reflect that the pleadings were amended to include the affirmative defense, we deem the defense waived.[25] Further, because we deem this issue waived, Florence's argument in response is not considered.

---

[22] MCR 2.111(F)(3)(a) (emphasis added).

[23] *Nadell*, 481 Mich at 389.

[24] *Id.*

[25] *Id.*

### D. STATUTORY REMEDY

Essad argues that the trial court erred when it held that *Florence* could recover for his violation of MCL 450.4307. On this point, Essad is correct. Under MCL 450.4308, a member of a limited-liability company who assents to or receives a distribution in violation of MCL 450.4307 is "personally liable, jointly and severally, *to the limited liability company* for the amount of the distribution . . . ."[26] MCL 450.4308 does not provide relief to the limited-liability company's creditor (here, Florence) directly. Therefore, on remand, the trial court should modify the judgment, in accordance with the statute, by ordering Shelby's members to refund the unlawful distributions to Shelby so that Shelby can satisfy its obligation to Florence.

### VII. CONCLUSION

First, we conclude that the trial court erred by holding that piercing the corporate veil was not warranted. As we have explained, all the elements for piercing the corporate veil have been satisfied because defendants, while using Shelby as a mere instrumentality, committed fraud and caused loss to Florence.

Second, because Shelby made numerous distributions to, and for the benefit of, Shelby's members, the trial court erred by granting judgment on only the $19,000 distributions to Essad and Bencivenga. Moreover, the trial court erred by concluding that the judgment amount be paid to Florence directly. Accordingly, on remand, the trial court should order Shelby's members to refund all the unlawful distributions to Shelby so that Shelby can satisfy its obligation to Florence.

---

[26] MCL 450.4308(1) (emphasis added).

Third, the members' liability to Shelby for the amount of the unlawful distributions should be joint and several, pursuant to MCL 450.4308.

We reverse and remand for further proceedings pursuant to this opinion. We do not retain jurisdiction.

WHITBECK, P.J., and O'CONNELL and WILDER, JJ., concurred.