# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO-OWNERS INSURANCE COMPANY,

        Plaintiff-Appellant,

v

LYLE CHRISTOPHER KELLEY and NORTH
ARROW LOG HOMES, INC.,

        Defendants-Appellees,

and

STEVEN PRAIN and JENNAFER PRAIN,

        Intervening Defendants-Appellees.

UNPUBLISHED
July 21, 2015

No. 319641
Montmorency Circuit Court
LC No. 13-003231-CK

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

This insurance coverage dispute arises from the underlying complaint of intervenors Steven and Jennafer Prain against defendants Lyle Kelley and North Arrow Log Homes, Inc. ("North Arrow"). In the underlying complaint, the Prains sued Kelley and North Arrow for damages associated with alleged deficiencies in a log home that Kelley and North Arrow constructed.[1] Plaintiff, the insurer for Kelley and North Arrow, filed the instant action for declaratory relief, seeking a determination that it had no duty to defend or indemnify Kelley and North Arrow in the underlying action. The trial court granted summary disposition in favor of the Prains, and we affirm in part, reverse in part, and remand.

The Prains contracted with North Arrow to construct a log cabin home on property they owned in northern Michigan. North Arrow was only responsible for the exterior log shell of the home. The Prains also engaged Sweetwater Homes, a general contractor, and utilized Render Construction for work on the interior of the home. North Arrow was not a subcontractor of Sweetwater Homes.

---

[1] Kelley was the president of North Arrow.

-1-

After the home was completed in December 2006, the Prains noticed structural problems with the home, and although North Arrow apparently attempted to remedy some problems, the problems persisted. The problems included dislodged logs and roof problems such that water and exterior weather elements were able to enter the home, causing damage to the interior of the structure. The Prains filed a nine-count complaint against North Arrow and Kelley (the underlying complaint), alleging the following: I–Breach of Contract, II–Promissory Estoppel, III–Bad Faith and Breach of Covenant of Good Faith and Fair Dealing, IV–Breach of Warranty, V–Negligent Construction, VI–Violation of Residential Builders Act, VII–Professional Malpractice, VIII–Defective and Unsafe Condition of Improvement to Real Property, and IX–Fraud/Misrepresentation/Negligent Misrepresentation/Equitable Estoppel.

Plaintiff filed the instant action for declaratory relief, arguing that there was no "occurrence" under the terms of the policy and that it therefore had no duty to defend or indemnify. Plaintiff then moved for summary disposition. Plaintiff first argued that the alleged defects in the construction did not constitute an "accident" or "occurrence" under the policy, thereby precluding coverage. Plaintiff also argued that policy exclusions "j" and "m" precluded coverage. Finally, plaintiff argued that it was entitled to summary disposition because the underlying complaint alleged "intentional" conduct and exclusion "a" of the policy excluded coverage for expected or intended consequences. In response, the Prains submitted affidavits to the trial court attesting that North Arrow's allegedly negligent construction caused damage to property other than property North Arrow was responsible for, i.e., drywall, carpeting, painting, and other interior work completed by Sweetwater Homes and Render Construction, thereby qualifying as an occurrence or accident.

The trial court first ruled that because "the structural deficiencies caused by North Arrow has led to significant damage to the work product of others," there was an "occurrence" under the policy. The trial court also determined that exclusions "j" and "m" did not apply, but it did not specifically address exclusion "a." As a result, the trial court granted summary disposition in favor of the Prains.

## I. STANDARDS OF REVIEW

Even though the trial court cited both MCR 2.116(C)(8) and (10) in its opinion granting summary disposition in favor of the Prains, it is evident that the court relied on materials outside of the pleadings. Consequently, we review its decision as though it had been made under MCR 2.116(C)(10). *Haynes v Village of Beulah*, 308 Mich App 465, ___; ___ NW2d ___ (2014), slip op, p 2. A court's ruling on a motion for summary disposition under MCR 2.116(C)(10) is reviewed de novo. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013); *Dunn v Bennett*, 303 Mich App 767, 770; 846 NW2d 75 (2014). Because such a motion "tests the factual sufficiency of the complaint," this Court considers "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The motion is properly granted if the evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

Additionally, the construction and interpretation of an insurance contract is a question of law that we review de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Interpretation of insurance policy terms follows Michigan's established principles of contract construction. *Id.*

> First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity. [*Id.* at 354 (citations omitted).]

## II. DUTY TO INDEMNIFY

The insurance policy at issue provides that plaintiff will only pay North Arrow "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy then states that it only applies to "bodily injury" and "property damage" if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory." Under the definition section, the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## A. DID AN "OCCURRENCE" OR "ACCIDENT" HAPPEN?

Plaintiff first argues that an "occurrence," as defined by its policy, was not alleged in the underlying complaint. Plaintiff acknowledges that this Court has determined that an "accident" or "occurrence" arises "when an insured's defective workmanship results in damage to the property of *others*." *Radenbaugh v Farm Bureau General Ins Co of Mich*, 240 Mich App 134, 147; 610 NW2d 272 (2000), quoting *Calvert Ins Co v Herbert Roofing & Insulation Co*, 807 F Supp 435, 438 (ED Mich, 1992) (quotation marks omitted; emphasis added).[2] Plaintiff's sole argument on appeal on this matter is that there is no accident or occurrence because the Prains alleged in their underlying complaint that the only damage that happened was to the home structure that North Arrow constructed. In other words, because "the property of others" was not alleged to have been damaged, it was clear that there was no accident or occurrence, and plaintiff had no duty to indemnify or defend. However, in focusing solely on the underlying complaint, plaintiff ignores the documentary evidence that was submitted on the motion for summary disposition. In their response to plaintiff's motion for summary disposition, the Prains presented several affidavits attesting that North Arrow's construction allowed water and weather elements to enter the home, which caused substantial damage to the work done by other contractors. There was no contractual relationship between these other firms and North Arrow. Further, the damaged work was separate and distinct from the exterior log shell for which North Arrow was responsible. This damage included interior walls, drywall, and electrical work. As a result, the

---

[2] Notably, the Court in *Radenbaugh* was dealing with an insurance policy that had the exact same definition of "occurrence" as we have in the instant case. *Radenbaugh*, 240 Mich App at 140.

Prains carried their burden of responding to plaintiff's arguments with affidavits outlining the underlying facts. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Plaintiff did not rebut any of these allegations with affidavits or documentary evidence of its own. Therefore, there is no question of fact that the work product of others was damaged, which means that an "occurrence" under the policy happened.[3]

### B. DO ANY POLICY EXCLUSIONS PRECLUDE COVERAGE?

Plaintiff next argues that it is not obligated under the policy because any alleged liability is excluded by two provisions in the policy.

### *i. Exclusion A*

Plaintiff first relies on exclusion "a," which provides that the coverage does not apply to "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Plaintiff claims that the Prains' underlying complaint makes several allegations of intentional conduct, which would fall under this exclusion. Specifically, plaintiff relies on the following allegations in the original underlying complaint:

- Kelley intentionally abused North Arrow's corporate form to commit fraud and other wrongs, thereby becoming individually liable by piercing the corporate veil.

- Kelley and North Arrow intentionally and willfully breached the contract.

- Count IX's cause of action for fraud and misrepresentation.

We conclude that plaintiff is reading the scope of exclusion "a" too broadly. The exclusion only applies to *property damage* that was "expected or intended from the standpoint of the insured."

---

[3] By focusing only on the allegations in the underlying complaint, plaintiff is taking the court's decision under MCR 2.116(C)(10) and analyzing it under MCR 2.116(C)(8), which tests the *legal* sufficiency of a complaint, where *only* the pleadings themselves are considered (the underlying complaint was attached to the instant complaint). *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 344; 745 NW2d 137 (2007).

We also note that even if the complaint in its original form warranted that summary disposition be granted under MCR 2.116(C)(8) in favor of plaintiff, the Prains have since amended their underlying complaint at the trial court to clarify that North Arrow was only responsible for the exterior shell of the home and that the alleged damage occurred to other areas of the home. See MCR 2.116(I)(5) (stating that if summary disposition is to be granted under MCR 2.116(C)(8), (9), or (10), then "the trial court shall give the parties an opportunity to amend their pleadings"). Thus, any error has been rendered moot because the complaint now specifically alleges damage to property of which North Arrow was not responsible.

None of the allegations listed above *necessarily* relate to Kelley's or North Arrow's expectation or intent to damage property.

First, Kelley's alleged abuse of the corporate form has no bearing on whether he or North Arrow intended to cause the damage at issue here. Piercing the corporate form focuses on whether individuals ignored the corporate form and instead used the corporate form as a mere instrumentality or alter ego for themselves. See *Florence Cement Co v Vettraino*, 292 Mich App 461, 469; 807 NW2d 917 (2011).

Next, the Prains' allegation that Kelley and North Arrow intentionally and willfully breached the contract is not enough to show that Kelley and North Arrow actually intended to cause or expected the resulting damage. In fact, from looking at the complaint as a whole, it is not clear what actions supposedly constitute this intentional and willful behavior. Thus, the supposed intentional and willful behavior may only relate to the scope of its own work and have nothing to do with an intentional desire to cause damage to others.[4]

Last, plaintiff's reliance on Count IX is misplaced. Count IX, in addition to listing fraud and misrepresentation, also listed negligent misrepresentation. Thus, categorizing this count as being based solely on intentional conduct is not accurate. Therefore, plaintiff being absolved of liability from the entire complaint or even this count, as plaintiff seems to suggest, would not be warranted.

*ii. Exclusion J*

Plaintiff also argues that exclusion "j," covering damage to property, precludes liability. In relevant part, that exclusion states that the insurance does not apply to property damage to

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Plaintiff's argument merely is a repetition of its earlier argument related to its contention that the Prains alleged that nothing other than the exterior shell of the home was damaged. However, for the same reasons provided earlier, this argument is without merit. The Prains responded to plaintiff's motion for summary disposition by providing evidence that there was damage to the interior of the home and not simply to the log shell constructed by North Arrow. As plaintiff acknowledged in its brief on appeal, the instant exclusion pertains only to North Arrow's

---

[4] For example, a contractor could contract with a homeowner to use certain materials, but the contractor may intentionally breach the contract in using different materials, all with the intent and expectation to still provide a quality product.

operation and scope of work and damages (repair, restoration, or replacement) *to its own work.* At oral argument, plaintiff took a different position, however, arguing that the "it" in subsection (7)'s phrase "performed on it," referred only to "any property," which plaintiff claims means that as long as North Arrow worked on "any property," any resulting damage—regardless of what property ultimately was damaged—was excluded from coverage. This argument is untenable. The clear reading of this subsection reveals that "it" refers to the entire preceding noun phrase, "[t]hat particular part of any property that must be restored, repaired or replaced." Consequently, the exclusion pertains to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on that particular part of any property that must be restored, repaired or replaced." Put in more simple terms, the exclusion only applies to property that North Arrow worked on that required restoration, repair, or replacement as a result of its work, and plaintiff has failed to show how there was any error.

## C. CLARIFICATION OF PLAINTIFF'S DUTY TO INDEMNIFY

Even though we understand why the court granted summary disposition in favor of the Prains, we must reverse in part because the order should have clarified that plaintiff would not have to indemnify North Arrow for damages to North Arrow's own work product, which only includes the exterior structure of the home. See *Radenbaugh*, 240 Mich App at 147. Further, the order should have specified that plaintiff also would not be liable to indemnify North Arrow for any damage that was intentionally caused by North Arrow, as this type of damage is specifically excluded under the terms of the policy. As a result, plaintiff has a duty to indemnify North Arrow, but it ultimately is subject to the jury's findings of fact in the underlying proceeding, the findings of fact in this declaratory proceeding, or the findings of fact made in a consolidated proceeding.[5] On remand, the trial court is to amend its order accordingly.

## III. DUTY TO DEFEND

With regard to an insurer's duty to defend, Michigan has developed several principles of insurance law that apply in this case. First, where "allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." *Id.* at 137 (quotation marks and citation omitted). "The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third-party's allegations to analyze whether coverage is possible." *Id.* at 137-138. Furthermore, "an insurer has a duty to defend, despite theories of liability asserted against an insured which are not covered under the policy, if there are *any* theories of recovery that fall within the policy." *Dochod v Central Mut Ins Co*, 81 Mich App 63, 67; 264 NW2d 122 (1978) (emphasis added).

Given the above case law, it is clear that because some of the Prains' allegations in their underlying complaint clearly contemplate covered occurrences, plaintiff has a duty to defend on the entire action. As just one example, the Prains' Count V alleges negligent construction, which

---

[5] However, as discussed later in footnote 6, our opinion is not to be construed as ruling that all of the Prains' underlying claims would survive any challenge under summary disposition and make it to a jury.

if proven would appear to qualify as an "occurrence" that is covered under the policy.[6] Thus, summary disposition on this aspect was properly granted in favor of the Prains.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, as neither party prevailed in full. MCR 7.219.


/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello

---

[6] We note that our opinion today is not to be interpreted as deciding on the ultimate validity of any of the Prains' claims in the underlying suit. Consistent with how the parties and the trial court treated the issues, our review in the instant case is a much more general analysis. As such, the trial court in the underlying proceeding shall not be constrained by our opinion in determining the gravamen of the (amended) underlying complaint, see *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007), or in determining whether any of those claims would survive any motion for summary disposition if any are brought.