# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOHN KENNEY, JAMES BREWER, and
TAMMY BELL,

       Plaintiffs-Appellees,

v

DANIEL P. BOSS, BOSS COGO, LLC, and
BOSS ENGINEERING COMPANY,

       Defendants-Appellants,

and

VENTURA CAPITAL, LLC,

       Defendant.

UNPUBLISHED
July 18, 2017

No. 331905
Livingston Circuit Court
LC No. 13-027397-CK

---

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendants Daniel P. Boss, Boss Cogo, LLC, and Boss Engineering Company[1] appeal as of right an amended order of judgment entered in favor of plaintiffs John Kenney, James Brewer, and Tammy Bell, following a jury trial. However, at issue is the order denying defendants' motion for judgment notwithstanding the verdict. For the reasons stated herein, we affirm in part, reverse in part, and remand for entry of an order consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from a project to develop property that ultimately failed. David and Ruth Ann Ventura,[2] John and Charlene Kenney,[3] and formerly married couple James Brewer and

---

[1] Ventura Capital, LLC was named as a defendant below, but is not a party to this appeal. We will refer to appellants collectively as defendants, and will refer to Ventura Capital separately.

[2] David and Ruth Ann Ventura were not plaintiffs in the lower court case, and are not parties to this appeal. They were involved in a separate suit with Daniel Boss.

-1-

Tammy Bell each owned 11 acres of property, including a house, on Burkhart Road in Howell. In 2005, David Ventura spoke with Daniel Boss, president of Boss Engineering, about combining and developing the 33 acres of property into condominiums. He believed Daniel Boss could assist with the project. David Ventura then pitched the idea to the other property owners.

On December 16, 2005, the property owners formed Ventura Capital by executing an Operating Agreement.[4] According to the Operating Agreement, the members of Ventura Capital were Ruth Ann Ventura, John Kenney, Charlene Kenney, James Brewer, and Boss Cogo.[5] Daniel Boss signed on behalf of Boss Cogo,[6] and was designated the resident agent and initial manager of Ventura Capital. The purpose of Ventura Capital was "to engage in the acquisition, development, and sale of 33 . . . acres on Burkhart Road currently owned by Ventura, Kenney, and Brewer for profit and gain."

Per the Operating Agreement, the property owners were responsible for paying the mortgages on their respective homes, in addition to taxes and insurance, and contributing their 11 acres of property each, in exchange for 16.67% ownership in Ventura Capital.[7] Boss Cogo was required to provide Ventura Capital expertise and cash contributions for the development and infrastructure of the property, in exchange for a 50% share of the company. Finally, Ventura Capital was responsible for obtaining commercial mortgages on the three homes. The Operating Agreement also addresses the responsibility for payment of sewer and water assessments. Article 2.3 states, in part, "Sewer or water assessments shall be paid by each member proportionally." Further, Article 2.4 provides, "There shall be no requirement for additional cash contributions by any member except each member must pay water and sewer assessments proportionately." The Operating Agreement's integration provision states:

> This Operating Agreement constitutes the entire agreement among the parties with respect to the subject matter. This Operating Agreement supersedes and terminates any and all other previous or contemporaneous communications, representations, understandings, agreements, negotiations, and discussions, whether oral or written, between the parties with respect to the subject matter. The parties acknowledge and agree that there are no written or oral agreements, understandings, or representations directly or indirectly related to this Operating Agreement or the subject matter that are not expressly set forth in this Agreement.

---

[3] Charlene Kenney passed away in 2010.

[4] The Articles of Organization for Ventura Capital were not filed until August 25, 2006.

[5] The Articles of Organization for Boss Cogo were not filed until August 23, 2006. The address listed for both Ventura Capital and Boss Cogo was Boss Engineering's address.

[6] Per Boss Cogo's Operating Agreement, its original members were Boss Engineering and a man named Geoffrey Havens.

[7] Page 11 of the Operating Agreement is titled Schedule A. It is a table that lists each member's initial capital contribution, and share of Ventura Capital.

First, each of the properties was rezoned. Then, in November 2006, without first splitting off the back acres of the properties that did not contain the homes, the property owners obtained 23 residential equivalent units (REUs) each for sewer and water connections. Boss Cogo paid the sewer and water assessments the first year, with the exception of the three attached to the property owners' houses. However, in approximately May 2008, Daniel Boss informed the property owners that Boss Cogo would no longer pay any assessments until they provided free and clear title to their property to Ventura Capital. Plaintiffs were unable to split off their back acres of property from their mortgages, and provide free and clear title. Eventually, the property owners lost their homes to foreclosure.

On November 2, 2012, plaintiffs filed a complaint against defendants and Ventura Capital, asserting breach of contract, three counts of fraudulent misrepresentation, and silent fraud. Following a six-day jury trial, the jury found that Daniel Boss committed three counts of fraudulent misrepresentation for telling plaintiffs that they were required to provide free and clear title, that Boss Cogo had no obligation to pay for any sewer or water assessments until they provided free and clear title, and that Ventura Capital did not have to obtain a commercial mortgage until they provided free and clear title. It found Boss Engineering liable for the second count, as well. Next, the jury found that Daniel Boss, but not Boss Engineering, committed silent fraud by telling plaintiffs "to sign a faxed request for 23 REUs to be allocated to their properties, and failing to disclose that signing the request for 23 REUs would render each homeowners' property subject to hundreds of thousands of dollars of sewer and water assessments that, if not paid, would result in plaintiffs losing their homes[.]" The jury did not award damages for any of the fraud claims.

With regard to breach of contract, the jury found that Boss Cogo breached the Operating Agreement when Daniel Boss told the property owners that he would not pay any more assessments until they provided free and clear title, and pierced the corporate veil to hold Boss Engineering liable, as well. For this claim, the jury awarded John Kenney $137,500 in reliance damages and $30,000 in consequential damages, and James Brewer and Tammy Bell each $56,250 in reliance damages and $15,000 in consequential damages. The trial court entered an order of judgment consistent with these findings.

Defendants subsequently filed a motion for JNOV. With regard to breach of contract, defendants asserted that judgment should be entered in their favor because the verdict was predicated on a promise that contradicted the plain terms of the Operating Agreement, plaintiffs failed to prove proximate cause, plaintiffs lacked standing to sue Boss Cogo, the alter-ego theory was not plead in the complaint, and plaintiffs failed to present evidence that Boss Cogo was created to perpetrate a fraud. With regard to the fraud claims, defendants asserted that any reliance on plaintiffs' part was unreasonable because the alleged misrepresentations contradicted the plain language of the Operating Agreement, that the evidence was insufficient as a matter of law to support the claims, that plaintiffs failed to establish defendants concealed facts they had an obligation to disclose, and that plaintiffs failed to prove proximate cause. On October 22,

2015, the trial court entered an order denying defendants' JNOV motion for the reasons stated on the record at a hearing held that same day.[8]

## II.  ANALYSIS

## A.  BREACH OF CONTRACT

Defendants first argue that the trial court erred when it denied their JNOV motion because plaintiffs' breach of contract claim fails as a matter of law.  Specifically, they assert that the jury's verdict was predicated on an alleged promise inconsistent with the plain terms of the Operating Agreement, that plaintiffs failed to prove proximate cause, and that plaintiffs lacked standing to assert the claim.

We review de novo a trial court's decision with regard to a JNOV motion.  *Dell v Citizens Ins Co of America*, 312 Mich App 734, 752; 880 NW2d 280 (2015), citing *Morinelli v Provident Life and Accident Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2000).  " 'In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party.  If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand.' "  *Dell*, 312 Mich App at 752, quoting *Morinelli*, 242 Mich App at 260-261.  A JNOV motion should only be granted if the evidence presented fails to state a claim as a matter of law.  *Prime Fin Servs LLC v Vinton*, 279 Mich App 245, 255-256; 761 NW2d 694 (2008).

"The interpretation and application of the court rules, like the interpretation of statutes, is a question of law that is reviewed de novo on appeal."  *Dell*, 312 Mich App at 752 (citation and quotation marks omitted).  We also review de novo questions involving the interpretation of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005), whether contract terms are ambiguous, *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002), and whether a party has standing, *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008).

Defendants' argument that the trial court erred when it denied the JNOV motion because the jury's verdict was predicated on a promise inconsistent with the plain terms of the operating agreement lacks merit.  First, defendants mischaracterize plaintiffs' breach of contract claim. Plaintiffs did not assert that Boss Cogo breached the Operating Agreement when Daniel Boss told plaintiffs it would no longer pay *their* portion of the sewer and water assessments.  Instead, they asserted that Boss Cogo breached the Operating Agreement when Daniel Boss said that Boss Cogo would no longer pay any assessments, despite its obligation to pay its proportional or proportionate share.  In fact, for plaintiffs' breach of contract claim, the verdict form read, "Did Boss Cogo breach the contract when Dan Boss told the homeowners that he would not pay for any more assessments until the homeowners provided free and clear title?"  Further, the trial court instructed the jury that "[t]his case involves a claim by John Kenney, Tammy Bell, and

---

[8] The parties did not submit a transcript of this hearing to the Court.

James Brewer that Boss Cogo breached the operating agreement by failing to pay its proportionate share of the sewer and water assessments."

Second, the trial court did not err when it allowed the admission of extrinsic evidence to assist with the interpretation of Boss Cogo's obligations under the Operating Agreement. When an agreement includes an integration clause, like that included in the Operating Agreement, "it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.' " *Hamade v Sunoco Inc (R & M)*, 271 Mich App 145, 169; 721 NW2d 233 (2006) (citations and quotation marks omitted). Further, the parol evidence rule prohibits the use of extrinsic evidence to interpret unambiguous contract language in a contract. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "However, if a contract is ambiguous, then 'extrinsic evidence is admissible to determine the actual intent of the parties.' " *Id*. (citation omitted). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540-541; 549 NW2d 612 (1996).

Plaintiffs claimed that Boss Cogo breached the Operating Agreement when Daniel Boss said that he would no longer pay any assessments until the property owners transferred free and clear title to their properties. Thus, an understanding of Boss Cogo's obligations under the Operating Agreement with regard to assessments, including the terms "proportionately" and "proportionally," was material to the claim. The Operating Agreement does not define the terms, and they are certainly susceptible to more than one interpretation. Thus, the introduction of extrinsic evidence was permissible to aid the jury in its interpretation of the terms.

Defendants' argument that the trial court erred when it denied the JNOV motion because plaintiffs presented insufficient evidence that any breach of the Operating Agreement was the proximate cause of their damages also lacks merit. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A defendant's breach must be the proximate cause of a plaintiff's harm. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 254; 792 NW2d 781 (2010). "In other words, the breach must be the most direct, natural, and foreseeable cause of the plaintiff's harm." *Id*. Proximate cause is an issue for the trier of fact. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). "However, if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law." *Id*.

Viewing the testimony in a light most favorable to plaintiffs, material factual issues existed with regard to proximate cause, and reasonable jurors could have determined that defendants' breach of the Operating Agreement proximately caused plaintiffs to lose their homes to foreclosure. Despite defendants' argument to the contrary, the property owners who testified at trial all stated, in one form or another, that their inability to pay the sewer and water assessments attached to their properties after Boss Cogo, through Daniel Boss, refused to pay, led to the foreclosure of their homes. For example, John Kenney testified that he stopped making mortgage payments on his house because he could not afford the assessments. Further,

when asked why she lost her home to foreclosure, Tammy Bell testified that she could not pay the taxes assessed. Thus, the trial court properly denied defendants' JNOV motion on this basis.

Finally, defendants' argument that the trial court erred when it denied the JNOV motion because plaintiffs lacked standing to sue Boss Cogo for breach of contract lacks merit. Defendants argue that Ventura Capital, not plaintiffs, would be the party with the vested right of action in a breach of contract claim against Boss Cogo because Boss Cogo's obligations under the Operating Agreement were to Ventura Capital, not the other members of the LLC. Thus, they assert, plaintiffs should have sued Boss Cogo derivatively.

"MCR 2.201(B) provides that '[a]n action must be prosecuted in the name of the real party in interest . . . .' " *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015) (alteration in original). "The real party in interest is a party who is vested with a right of action in a given claim, although the beneficial interest may be with another." *Id.* In other words, "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

In the corporation context, "a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003). Thus, "where the alleged injury to the individual result only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." *Mich Nat'l Bank v Mudgett*, 178 Mich App 677, 680; 444 NW2d 534 (1989). "Although a limited liability company is not a corporation under Michigan law, it is nonetheless true that the rules regarding corporate form apply equally to limited liability companies . . . ." *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 223; 880 NW2d 793 (2015) (citations omitted). MCL 450.4510 provides the criteria for bringing for bringing a derivative suit on behalf of an LLC.

Under the Michigan limited liability company act, MCL 450.4101 *et seq.*, member contributions are made to the LLC. MCL 450.4301(1);[9] MCL 450.4302(2).[10] Further, in the Ventura Capital Operating Agreement itself, Boss Cogo's cash contributions for the development of the property were to be made to the LLC. Section 2.3 states, in part: "No member other than Boss Cogo, LLC is required to add additional funds to allow the Company to conduct its

---

[9] MCL 450.4301(1) states, "A contribution of a member to a limited liability company may consist of any tangible or intangible property or benefit to the company, including cash, property, services performed, promissory notes, contracts for services to be performed, or other binding obligation to contribute cash or property or to perform services."

[10] MCL 450.4302(2) states, in pertinent part, "Unless otherwise provided in an operating agreement, a member is obligated to the limited liability company to perform any enforceable promise to contribute cash or property or to perform services, even if the member is unable to perform because of death, disability, or other reason."

business. Boss Cogo, LLC's cash contributions to the Company shall be for the development and infrastructure of the property." In contrast, though, the Operating Agreement does not provide that sewer and water assessments must be paid to the LLC. It says only that they must be paid by each member proportionally or proportionately. In fact, Boss Cogo paid the assessments directly to Howell Township. Thus, payment of the assessments was not an obligation owed to Ventura Capital, and plaintiffs were the real party in interest with a vested right of action against Boss Cogo for breach of contract.

## B. PIERCING THE CORPORATE VEIL

Next, defendants argue that the trial court erred when it denied their motion for JNOV because the jury held Boss Engineering responsible for breach of contract, by piercing Boss Cogo's corporate form, despite the fact that plaintiffs failed to plead an alter-ego theory in their complaint. Further, defendants cursorily assert that plaintiffs presented no evidence of fraud, wrongdoing, or misuse of Boss Cogo's corporate form.

Again, we review de novo a trial court's decision with regard to a JNOV motion. *Dell*, 312 Mich App at 752, citing *Morinelli*, 242 Mich App at 260. " 'In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand.' " *Dell*, 312 Mich App at 752, quoting *Morinelli*, 242 Mich App at 260-261. A JNOV motion should only be granted if the evidence presented fails to state a claim as a matter of law. *Prime Fin Servs LLC*, 279 Mich App at 255-256.

"The rules regarding piercing a corporate veil are applicable in determining whether to pierce the corporate veil of a limited-liability company." *Florence Cement Co v Vettraino*, 292 Mich App 461, 468-469; 807 NW2d 917 (2011). "While [t]here is no single rule delineating when the corporate entity may be disregarded[,] . . . [t]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Id.* at 469 (citations and quotation marks omitted; alterations in original). To pierce the corporate veil, "the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff." *Id.*

Defendants assert only that plaintiffs presented no evidence of wrong, fraud, or misuse of the corporate form.[11] "In considering this element, it is not necessary to prove that the owner caused the entity to directly harm the complainant; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the complainant." *Green v Ziegelman*,

---

[11] Defendants also argue that the trial court erred when it denied the JNOV motion because plaintiffs failed to plead an alter-ego theory in their complaint. However, defendants cite only an unpublished case to support this argument. Unpublished opinions of this Court are not binding precedent. MCR 7.215(C)(1). Thus, this argument fails.

310 Mich App 436, 458; 873 NW2d 794 (2015). But "establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence." *Id*. at 459.

Plaintiffs presented evidence from which reasonable jurors could conclude that Boss Engineering used Boss Cogo to commit a wrong – breach of contract – against plaintiffs. John Kenney testified that Daniel Boss told him Boss Cogo would no longer be paying any assessments after having paid the assessments the first year. Further, Daniel Boss himself testified that, in approximately May 2008, he told David Ventura and James Brewer that Boss Cogo would no longer pay the assessments if they could not get their properties into Ventura Capital.

Thus, defendants' argument that the trial court erred when it denied the JNOV motion because plaintiffs presented insufficient evidence to pierce Boss Cogo's corporate veil and hold Boss Engineering liable for breach of contract lacks merit. Viewing the evidence in a light most favorable to plaintiffs, reasonable jurors could have concluded that Boss Engineering used Boss Cogo to commit a wrong.

## C. FRAUDULENT MISREPRESENTATION

Next, defendants argue that the trial court erred when it denied the JNOV motion with regard to plaintiffs' fraudulent misrepresentation claims. Specifically, they assert that the claims fail as a matter of law because the alleged misrepresentations contradict the plain language of the Operating Agreement, that plaintiffs presented insufficient evidence to support the claims, and that plaintiffs failed to prove proximate cause.

Considering defendants' arguments in combination, we hold that the trial court erred when it denied defendants' JNOV motion with regard to plaintiffs' fraudulent misrepresentation claims.

To reiterate, plaintiffs claimed that Daniel Boss made the following three fraudulent misrepresentations: (1) that plaintiffs were required to provide free and clear title; (2) that Boss Cogo had no obligation to pay for any sewer or water assessments until the property owners provided free and clear title; and (3) that Ventura Capital did not have to obtain a commercial mortgage until the property owners provided free and clear title. A successful claim for fraudulent misrepresentation requires that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004) (citations and quotation marks omitted).]

A plaintiff's reliance must be reasonable. *Id*. at 389. Further, in *Fultz v Union-Commerce Assoc*, 470 Mich 460, 461-462, 466; 683 NW2d 587 (2004), a case involving a slip and fall

negligence action, the Michigan Supreme Court held that a "tort action will not lie when based solely on the nonperformance of a contractual duty."

First, we fail to comprehend how any statement that plaintiffs were required to provide free and clear title, by itself, was fraudulent. The Operating Agreement stated that the property owners would contribute their properties to Ventura Capital for development. Schedule A provided that each property-owning couple would receive a 16.67% ownership in Ventura Capital in exchange for 11 acres of property. Further, many of the property owners testified that the project would involve a transfer of their property.

Second, plaintiffs could not have reasonably relied upon the second two representations when considering the terms of the Operating Agreement. The Operating Agreement did not make the payment of assessments, or the obligation that Ventura Capital obtain commercial mortgages on the property owners' homes, contingent upon the property owners providing free and clear title to their property. One cannot rely on an alleged misrepresentation when it contradicts the plain terms of a contract between the same parties. See *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) ("There can be no fraud where a person has the means to determine that a representation is not true.").

Finally, any claim that Daniel Boss said Boss Cogo would no longer pay for sewer and water assessments unless the property owners provided free and clear title is just a restatement of the breach of contract claim, and insufficient evidence existed to support any of these alleged fraudulent misrepresentations. When asked how he was defrauded, John Kenney said only that no one explained how the REUs would affect the property owners, and that he did not understand the makeup of each of the companies involved in the project. Tammy Bell admitted that she said, in her deposition, she did not feel personally misled with regard to the project. And James Brewer admitted that, during his deposition, he said he did not know of any fraud committed by Daniel Boss or Boss Engineering. Thus, the trial court erred when it denied defendants' JNOV motion with regard to plaintiffs' three fraudulent misrepresentation claims.

## D. SILENT FRAUD

Lastly, defendants argue that the trial court erred when it denied their JNOV motion with regard to plaintiffs' silent fraud claim. Specifically, they assert that the claim fails as a matter of law because: (1) plaintiffs failed to establish that either Daniel Boss or Boss Engineering had a legal or equitable duty to tell plaintiffs that they would be financially responsible for the additional REUs requested for their properties; (2) the Operating Agreement made plaintiffs aware that water and sewer assessments would be substantial, and specified that each member would have to pay the assessments proportionately; and (3) plaintiffs failed to prove proximate cause.

We hold that the trial court erred when it denied defendants' JNOV motion with regard to plaintiffs' silent fraud claim. To reiterate, the jury found that Daniel Boss, but not Boss Engineering, committed a silent fraud for "telling the plaintiffs to sign a faxed request for 23 REUs to be allocated to their properties, and failing to disclose that signing the request for the 23 REUs would render each homeowners' property subject to hundreds of thousands of dollars of sewer and water assessments that, if not paid, would result in plaintiffs losing their homes."

-9-

Silent fraud is "[a] fraud arising from the suppression of the truth . . . which springs from the assertion of a falsehood[.]" *Roberts v Saffell*, 280 Mich App 397, 403-404; 760 NW2d 715 (2008) (citations and quotation marks omitted). "In order to maintain an action for silent fraud, 'the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure. A plaintiff cannot merely prove that the defendant failed to disclose something; instead, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive.' " *Barclae v Zarb*, 300 Mich App 455, 477; 834 NW2d 100 (2013), quoting *Lucas v Awaad*, 299 Mich App 345, 363-364; 830 NW2d 141 (2013) (citations and quotation marks omitted).

Neither defendants nor plaintiffs make a clear argument with regard to Daniel Boss's duty to disclose, and this Court has not been provided with the transcript from the JNOV motion hearing to consider the trial court's determination. Thus, defendants are in violation of MCR 7.210(B)(1)(a), and have waived the issue. See *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768-769; 887 NW2d 635 (2016).

Nevertheless, plaintiffs' silent fraud claim constitutes a restatement of their breach of contract claim. The testimony and evidence admitted at trial does not establish that plaintiffs failed to understand, as a result of concealment by Daniel Boss, that the REUs would encumber their properties with sewer and water assessments. Instead, the evidence establishes that plaintiffs believed Boss Cogo would pay its proportionate share of those assessments, per the Operating Agreement. Indeed, the REU requests signed by plaintiffs stated that the REUs would be allocated to their properties. Again, a "tort action will not lie when based solely on the nonperformance of a contractual duty." *Fultz*, 470 Mich at 461-462. Thus, the trial court erred when it denied defendants' JNOV motion with regard to plaintiffs' silent fraud claim.

Affirmed in part, reversed in part, and remanded to the trial court for entry of an order consistent with this opinion. No costs, neither party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello